**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **GLENN ROSEBROUGH,** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| **v.** | ) | **No. 08-4051-SAC–DWB** |
| **MICHAEL J. ASTRUE,** **Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act). Finding no error, the court recommends judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision.

## I. Background

Plaintiff applied for DIB and SSI on Jan. 11, 2005 alleging disability beginning Feb. 13, 2004. (R. 20, 83-87).[1] In due

[1]The Commissioner's "List of Exhibits" is deficient in identifying the exhibits in Sections A, B, D, and "SSI" of the 349-page administrative record filed in this case. (R. 1, 4).

course a hearing was held before Administrative Law Judge (ALJ) William G. Horne, and on Sept. 26, 2007 the ALJ filed a decision in the case. (R. 20-28, 303-49).

As relevant here, the ALJ determined at step two of the Commissioner's sequential evaluation process that plaintiff has a severe combination of impairments consisting of "disorder of wrist and hands and disorder of the knees." (R. 22). At step three, the ALJ determined that plaintiff's severe combination of impairments does not meet or medically equal the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). (R. 24). The ALJ specifically found that plaintiff did not meet his burden at step three and that Listings 1.02 and 1.07 are not met or medically equaled because:

> the claimant does not have gross anatomical deformity of a joint resulting in inability to ambulate or to perform fine and gross movements effectively, nor does he have nonunion of a fracture of the humerus, radius or ulna. Furthermore, no doctor of record has stated

---

The "List of Exhibits" treats each of Sections A, B, and D of the administrative record as but a single exhibit, although those sections consist of many separate exhibits. Compare (R. 1), with (R. 41-87). Moreover, the administrative record as filed with the court contains no exhibits corresponding to the "Supplemental Security Income" section. (R. 4).

Contrary to the Commissioner's practice in this case, D. Kan. Rule 7.6(a)(4) requires that an index of the "separately labeled" exhibits attached to briefs or memoranda be provided to the court. The Commissioner may not avoid the stricture of the local rule merely by failing to separately identify the individual exhibits, and instead "separately labeling" as a single unit, an entire group of exhibits.

Nonetheless, the court has searched out the applicable documents and provided pinpoint citations herein.

> that the claimant's conditions meet or medically equal listing level criteria.

Id.

The ALJ continued his analysis through steps four and five of the sequential process and determined that plaintiff is capable of performing jobs that exist in significant numbers in the economy and is, therefore, not disabled within the meaning of the Act. (R. 24-27). Consequently, the ALJ denied plaintiff's applications. (R. 28).

On Sept. 28, 2007, two days after the decision at issue, and apparently before plaintiff had received a copy of the decision, plaintiff submitted additional evidence regarding treatment between Aug. 25, 2005 and Jan. 26, 2006. (R. 292-302). Plaintiff disagreed with the ALJ's decision, sought review by the Appeals Council, and submitted a letter containing his "Issues and Arguments on Appeal." (R. 11-13, 16). The Appeals Council received the additional evidence submitted by plaintiff on Sept. 28, 2007, and made it a part of the record. (R. 10). The Appeals Council considered the additional evidence and the reasons plaintiff disagreed with the decision, but found the information considered did not provide a basis to change the ALJ's decision, and denied plaintiff's request for review. (R. 6-9). Therefore, the ALJ's decision is the final decision of the Commissioner. Id.; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review of the decision.

**II. Legal Standard**

The court's review is guided by the Act. 42 U.S.C. §§ 405(g), 1383(c)(3). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). As plaintiff argues, failure to apply the correct legal standard is, by itself, a sufficient basis to justify remand. Byron v. Heckler, 742 F.2d 1232, 1236 (10th Cir. 1984)(holding that failure to apply the medical improvement standard "is, by itself, sufficient to command reversal").

Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's

decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d). The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2007); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the

severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Id. at 750-51. If the impairments do not meet or equal a listing, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520, 416.920. This assessment is used at step four and step five of the sequential evaluation process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform his past relevant work, and whether he is able to perform other work in the economy. Williams, 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Here, plaintiff claims only that the ALJ applied the incorrect legal standard, and that the ALJ erred therein in two respects: (1) He failed to obtain the testimony of a medical expert (ME) regarding the issue of medical equivalence to any impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Pl. Br. 9-11). And, (2) he failed to consider all of the evidence in the record. Id., 11-12. The Commissioner argues that the ALJ applied the correct legal standard to the step three

determination, that the initial and reconsideration medical reviews by the state agency consultants agreed with the determination of non-equivalence, and, therefore, the ALJ need not call an ME to testify regarding the issue of equivalence. (Comm'r Br. 9-11). With regard to the second issue, the Commissioner argues that the additional evidence was submitted after the decision at issue was rendered, so it was impossible for the ALJ to have considered it in reaching the decision, but that the Appeals Council properly considered the evidence and determined it would not change the decision. Id., at 12-13.

**III. Analysis.**

Plaintiff claims that symptoms and laboratory findings suggest plaintiff's condition is medically equivalent to Listing 1.07--Fracture of an upper extremity with nonunion of the shaft of the . . . radius. (Pl. Br. 8-10)(citing 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.07). This is so in plaintiff's view because medical evidence shows a "distal radius malunion" (Pl. Br. 10)(citing (R. 293-97)), this medical evidence was not available to the state agency consultants, Id.(citing (R. 225-32)), and, at the hearing ALJ Horne requested evidence regarding this malunion and stated "it joined, but it didn't join right, okay, it didn't fuse right and that's just like a non-union. . . . If it doesn't go back the way it was before you broke it, that's considered a non-union." Id.(citing (R. 348), and quoting (R. 345)).

Plaintiff claims that "Because of the evidence suggesting medical equivalence, the ALJ was required to obtain the testimony of a medical expert." Id.(citing Shook v. Barnhart, Civ. A. No. 5-4107-JAR, 2006 WL 4080050 (D. Kan. Aug. 21, 2006)[2]; and, Hearings, Appeals and Litigation Law Manual (HALLEX) I-2-5-34(B)).

The Commissioner argues that "Medical equivalence is not designed to provide an alternative for conditions that 'almost' meet the requirements of Listings," but only where there "are other findings that are at least of equal medical significance" to the Listing requirements. (Comm'r Br. 9). He argues that the evidence here does not suggest medical equivalence, and points out that plaintiff does not argue that his condition is medically equivalent to a Listing, but "merely challenges the fact that the determination was made without the assistance of a medical expert at the hearing." Id., at 10. Further, the Commissioner notes that the record before the ALJ includes medical evidence from Feb. 2, 2005 of a healed fracture in the wrist with a malunion (but not non-union), and this evidence was in the record when the reviewing state agency consultant made his determination on reconsideration. Id., at 10-11(citing (R. 207-08, 220, 232). The Commissioner explains that the state agency consultant's RFC

[2]Plaintiff cites to a Report and Recommendation which was later adopted by the District Court. Shook v. Barnhart, Civ. A. No. 5-4107-JAR, 2006 WL 2884083 (D. Kan. Oct. 4, 2006).

assessment establishes that the consultant considered the issue of medical equivalence, and that no further consideration is necessary because neither the ALJ nor the Appeals Council (after the additional evidence was received) determined that the evidence might change the state agency consultant's opinion with regard to equivalence. Id., at 11. Finally, the Commissioner argues that the HALLEX is not binding, and in any case does not help plaintiff's case because it only requires a new ME opinion when the ALJ is considering making a finding of medical equivalence, but the ALJ here found that medical equivalence was not present. Id., at 11-12(citing Schweiker v. Hansen, 450 U.S. 785, 789 (1981); McCoy v. Barnhart, 309 F. Supp. 2d 1281 (D. Kan. 2004); and, HALLEX I-2-5-34).

In the circumstances, the court finds no error in the failure to secure ME testimony regarding medical equivalence. The Commissioner has promulgated a "Listing of Impairments" which describes certain impairments that he considers disabling. 20 C.F.R. §§ 404.1525(a), 416.925(a) (2007); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If plaintiff's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling. Bowen v. Yuckert, 482 U.S. 137, 141 (1987); Williams, 844 F.2d at 751. However, plaintiff "has the burden at step three of demonstrating, through medical evidence, that his impairments

‘meet all of the specified medical criteria’ contained in a particular listing.” Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)).

Medical equivalence to a listing may be established by showing that the claimant’s impairment(s) “is at least equal in severity and duration to the criteria of any listed impairment.” 20 C.F.R. §§ 404.1526(a), 416.926(a). Where a claimant has a severe combination of impairments, which does not meet the severity of a listed impairment, the Commissioner will find that combination of impairments medically equivalent to a Listing, “[i]f the findings related to [claimant’s] impairment(s) are at least of equal medical significance to those of a listed impairment.” Id. §§ 404.1526(b)(3), 416.926(b)(3). Equivalence is based upon comparing medical findings related to the claimant’s impairment(s) with the criteria of the Listings. Id. §§ 404.1526(b), 416.926(b). Medical findings are “symptoms, signs, and laboratory findings.” Id. §§ 404.1528, 416.928. Determination of medical equivalence is made without consideration of the vocational factors of age, education, or work experience. 20 C.F.R. §§ 404.1526(c), 416.926(c).

“The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments

that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Zebley, 493 U.S. at 532-33. The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Yuckert, 482 U.S. at 153. "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

The court agrees with the Commissioner that the evidence here does not suggest medical equivalence. In plaintiff's view "distal radius malunion" is a medical finding of equal medical significance to the Listing criterion of "nonunion of the shaft of the . . . radius," and it is this fact which suggests medical equivalence. However, it is not even clear that the "distal radius" includes the "shaft of the radius." The "radius" is the larger of the two bones of the forearm, and the "distal radius" is the end of the radius which is nearest the wrist. Am. Acad. of Orthopaedic Surgeons, Patient Information, available at http://orthoinfo.aaos.org/topic.cfm?topic=A00412 (last visited, Feb. 2, 2009). Nonunion of a fracture of the end of the radius is not self-evident to be identical to nonunion of a fracture of the shaft of the radius. A finding of medical equivalence must

be based upon showing equal medical significance to the criteria of the Listing, yet plaintiff has presented no medical authority to support finding either (1) that a fracture of the distal radius is of equal medical significance to a fracture of the shaft of the radius or (2) that "distal radius malunion" is of equal medical significant to "nonunion of the shaft of the radius."

The only authority plaintiff presents is ALJ Horne's statement at the hearing that the failure of a bone to "join right" or to "fuse right" is "just like a non-union. I've had enough cases like that. If it doesn't go back the way it was before you broke it, that's considered a non-union." (R. 345). Plaintiff's argument fails for several reasons. First, there is no evidence (beyond plaintiff's apparent assumption) that a failure of a bone to "join right" or to "fuse right" is medically the same as a malunion such as that discussed in the medical evidence in this case. Second, even if the court were to assume (1) that at the hearing the ALJ was talking about a malunion such as that presented in the medical record and (2) was equating malunion with nonunion, the ALJ is not a medical expert, and is not entitled to rely upon his own lay opinion with regard to medical findings. Lax, 489 F.3d at 1089; Robinson v. Barnhart, 366 F.3d 1078, 1082, 1083 (10th Cir. 2004).

Finally, there is no hint in the decision at issue that ALJ Horne made any finding that a malunion is the same as a nonunion. There is authority that "a malunion is significantly different than a non-union." LeMaster v. Sec'y of H.H.S., No. 87-CV-74045-DT, 1990 WL 157504, *3 (E. D. Mich. July 24, 1990)(citing Schmidt's Attorney Dictionary of Medicine, Vol. 2, Matthew Bender Publications (1986)). Perhaps the ALJ discovered his statement at the hearing was erroneous, or recognized the error in stating a medical opinion without citation to authority, and decided not to include such a statement in his decision. In any case, he did not make such a finding in the decision. The court's task is to review the Commissioner's final decision, not to determine whether any faulty statements or decisions were made before reaching the final decision. Just as the court may not create post hoc rationalizations to support the Commissioner's decision, it may not determine the correctness or error of any statements made by the ALJ in the proceedings from which the decision proceeded and upon which the ALJ did not rely in his decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). There is simply no legitimate basis on this record to find that the evidence suggests medical equivalence to Listing 1.07.

Moreover, even if the court were to find that the evidence at issue here suggests medical equivalence, it finds the ALJ did not err in failing to obtain ME testimony regarding the issue of

equivalence. Contrary to plaintiff's assertion, the mere existence of evidence suggesting medical equivalence does not require an ALJ to obtain testimony from a ME.

As plaintiff's brief suggests, the Commissioner has issued a Social Security Ruling (SSR) explaining consideration of the opinions of program physicians and psychologists with regard to medical equivalence. SSR 96-6p, West's Soc. Sec. Reporting Serv., Rulings 129-32 (Supp. 2008). SSR 96-6p was issued to emphasize that (1) opinions by program physicians and psychologists must be treated as expert opinions, (2) ALJ's may not ignore these opinions and must explain the weight given them, and (3) "An updated medical expert opinion must be obtained by the administrative law judge or the Appeals Council before a <u>decision of disability</u> based on medical equivalence can be made." <u>Id.</u> at 129(emphasis added). As plaintiff points out, "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence . . . must be received into the record as expert opinion evidence and given appropriate weight." (Pl. Br. 9)(quoting SSR 96-6p). The Ruling provides that the physician's (or psychologist's) signature on a "Disability Determination and Transmittal Form" and certain other documents such as "Psychiatric Review Technique" forms or "Residual Functional Capacity Assessment" forms will ensure that an opinion regarding

medical equivalence has been obtained at the initial or reconsideration levels of administrative review. SSR. 96-6p, West's Soc. Sec. Reporting Serv., Rulings 131 (Supp. 2008).

The record here contains a "Disability Determination and Transmittal Form" completed at the reconsideration level and signed by Dr. Williamson, a program physician. (R. 41). Dr. Williamson also signed an RFC assessment form. (R. 232). Thus, in accordance with SSR 96-6p, the ALJ and the court may rely upon the fact that the opinion of a program physician regarding medical equivalence has been obtained. Plaintiff presents no evidence that Dr. Williamson is not a program physician or that Dr. Williamson did not consider medical equivalence in his reconsideration review and determination.

Plaintiff also claims that another opinion regarding medical equivalence was required to be obtained at the ALJ or Appeals Council level because additional medical evidence was received that might change the program physician's opinion. (Pl. Br. 9)(citing SSR 96-6p). The ruling is not so clear as plaintiff implies. The ruling notes that the ALJ or the Appeals Council must obtain an updated medical opinion from a ME "When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment

in the Listing of Impairments." SSR. 96-6p, West's Soc. Sec. Reporting Serv., Rulings 132 (Supp. 2008).

The additional evidence to which plaintiff refers is the evidence plaintiff submitted to the ALJ on Sept. 28, 2007, two days after the decision at issue. He argues that it is unclear whether the evidence was considered by the ALJ, and the appropriate remedy in such a case is reversal and remand. (Pl. Br. 12)(citing Baker v. Bowen, 886 F.2d 289, 291 (10th Cir. 1989)). Contrary to plaintiff's argument, however, it is clear that the ALJ did not consider the additional evidence. That evidence was submitted two days after the ALJ's decision was issued. However, the Appeals Council received the evidence and made it a part of the administrative record. (R. 10). In such circumstances, that evidence is a part of the administrative record and will be used by the court "in evaluating the Commissioner's denial of benefits." Chambers v. Barnhart, 389 F.3d 1139, 1142 (10th Cir. 2004)(quoting O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994)).

The ALJ noted a report of an MRI performed on May 27, 2004 which showed a suspected persistent fracture of the distal right radius. (R. 23)(citing Exhibit 3F/3(R. 187)). He specifically commented on Dr. Hoffman's treatment notes dated Feb. 2, 2005, and stated that Dr. Hoffman reported no degenerative changes, arthritis, or cyst formation, and that plaintiff refused surgery

on his wrist. (R. 23). As the Commissioner pointed out, in the Feb. 2, 2005 treatment note Dr. Hoffman also reported a "healed distal radius fracture with 15 degrees of dorsal tilt," and "a mild shortening and malunion of the distal radius." (R. 208)(emphasis added)(cited at (Comm'r Br. 10)). The evidence reveals that Dr. Hoffman's records were received at the Disability Determination Service on Apr. 14, 2005. (R. 207). Those notes and Exhibit 3F were part of the record reviewed by the state agency physician, Dr. Williamson, when he reviewed the RFC assessment and signed the reconsideration "Disability Determination and Transmittal Form" on Apr. 25, 2005. (R. 41, 232). Therefore, the evidence showing a malunion was in the record when the state agency consultant, Dr. Williamson, made his "not medically equivalent" determination.

In his reply brief, plaintiff argued that the ALJ discussed medical records from May 27, 2004 which showed a "persistent fracture of the distal right radius," and discussed "a number of Dr. Hoffman's findings from the February 2, 2005 report, yet failed to acknowledge the x-ray findings of malunion." (Reply 2)(citing (R. 23, 208)). Plaintiff argued for the first time in his reply brief that in discussing certain medical facts and omitting others the ALJ improperly picked and chose "only the evidence that detracts from [plaintiff's] claim. (Reply 2). The court disagrees in the circumstances present here.

As plaintiff acknowledges, the ALJ discussed a report of an MRI done on May 27, 2004 which "showed suspected persistent fracture of the distal right radius." (R. 23); compare (Reply 2). However, unlike the ALJ, plaintiff failed to acknowledge that the MRI report stated only that a "Persistent fracture of the distal right radius is suspected." (R. 187)(emphasis added). With regard to Dr. Hoffman's medical notes eight months later, on Feb. 2, 2005, the ALJ stated: "On February 2, 2005, the claimant complained that he could not work due to his right wrist and knee pain, but Dr. Hoffman reported that the claimant had no arthritis, cyst formation, or degenerative changes whatsoever on x-ray. The claimant refused surgery on his wrist." (R. 24)(citing Exhibit 4F/2(R. 208)). In his summary, the ALJ did not mention Dr. Hoffman's statement that plaintiff had "a mild shortening and malunion of the distal radius," and did not mention the x-ray report on the same page, and which Dr. Hoffman assessed as: "Healed fracture right distal radius." (R. 208).

Although the ALJ did not specifically mention these facts, he made a step-three finding that plaintiff does not have a nonunion of a fracture of the radius (R. 24), and he specifically noted that plaintiff refused surgery on his wrist. (R. 23). In the circumstances, the court finds that the facts discussed by the ALJ reveal he considered both that plaintiff had a healed fracture of the radius (plaintiff does not have a nonunion of a

fracture of the radius) and that plaintiff had a malunion of the distal radius (plaintiff refused surgery on his wrist)(implying there is a wrist problem which might be helped by surgery). While the ALJ did not state the particular wrist problem at issue, the only wrist problem revealed in the evidence is a malunion of the distal radius. There is no evidence the ALJ picked and chose among the evidence and discussed or considered only evidence supporting his decision.

The additional evidence presented by plaintiff on Sept. 28, 2007, however, was not available to Dr. Williamson or to ALJ Horne, and it shows a "distal radius malunion." Thus, plaintiff argues that remand is necessary because that evidence was not considered and because a ME opinion was not secured based upon consideration of that evidence. However, the Appeals Council specifically considered the additional evidence and determined that it would not justify a change in the ALJ's decision. (R. 7). The Appeals Council stated:

> x-rays submitted by your representative consisting of two views of the right wrist indicate that the distal radius and ulna were intact and no significant abnormality was identified. The additional evidence is new; however, it is consistent with the evidence already considered by the Administrative Law Judge and does not warrant a change in the Administrative Law Judge's decision. The Administrative Law Judge's decision is supported by the weight of the evidence.

(R. 7).

The court agrees with the Appeals Council's determination. The additional evidence to which plaintiff appeals was, in fact, considered by the Appeals Council, and remand is not necessary to ensure consideration of the evidence. Further, plaintiff points to no medical authority that a malunion is of equal medical significance to a nonunion. He does not show that the additional evidence "may change the State agency medical or psychological consultant's finding" regarding equivalence. Therefore, he has not shown error in failing to secure another ME opinion with regard to medical equivalence. As the ALJ found, plaintiff has not met his burden of proof at step three.

The authorities cited by plaintiff do not compel a different result. As plaintiff argues, the HALLEX states that an "ALJ must obtain an ME's opinion . . . When the ALJ is considering a finding that the claimant's impairment(s) medically equals a medical listing." HALLEX I-2-5-34 (available online at http://www.socialsecurity.gov/OP_Home/hallex/I-02/I-2-5-34.html)(last visited Jan. 29, 2009).

The Social Security Administration is bound by statutes, regulations, and rulings. E.g., 42 U.S.C. § 401 et seq.; 20 C.F.R. Pt 404, Pt. 416; 20 C.F.R. § 402.35(b)(1)(rulings are binding on the Social Security Administration); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(agency rulings are binding on an ALJ). The HALLEX is a procedure manual and to the

extent it follows the statutes, regulations, and rulings, it is enforceable. McCoy v. Barnhart, 309 F. Supp. 2d 1281, 1284 (D. Kan. 2004). Here, to the extent the HALLEX is interpreted to require a new ME opinion every time an ALJ considers whether a claimant's impairment medically equals a Listing, the HALLEX goes beyond the regulations and rulings.[3] As discussed above, SSR 96-6p only requires a new ME opinion when the adjudicator is of the opinion that the new evidence may change the program physician's opinion regarding equivalence. Moreover, requiring a new ME opinion every time the ALJ must make the step three determination of medical equivalence (and where there is medical evidence which has not been considered by a program physician) would require that a ME testify in all cases where additional medical evidence is developed by the ALJ after the reconsideration level. This finding would increase the cost of disability determination significantly. In the face of the clear meaning of SSR 96-6p, and the fact that the HALLEX is a procedures manual which makes a broad statement without explanation and without specific consideration of the impact on many cases, the court concludes that the HALLEX does not carry the force of law and is not

[3]The court notes that the HALLEX at issue may be interpreted only to require an ME opinion when the adjudicator believes the evidence suggests he should find medical equivalence. Such an interpretation is consistent with SSR 96-6p as discussed above. The court need not decide which interpretation of the HALLEX is proper, because it finds the HALLEX is not binding on the ALJ.

binding here. See also, McCoy, 309 F. Supp. 2d at 1284(HALLEX I-2-425(D) does not have the force of law and is not binding on the SSA).

Plaintiff's reliance on the court's opinion in Shook v. Barnhart, is also unavailing. Plaintiff cites the Shook opinion for the proposition that an ALJ is required to obtain the testimony of a ME when there is evidence suggesting medical equivalence. (Pl. Initial Br. 10). However, that was not the holding of Shook. In the decision being reviewed in Shook, the ALJ specifically "stated that an 'equals' finding requires an opinion by a 'qualified program physician' that plaintiff's impairment(s) equals a listing." Shook, 2006 WL 4080050 at *1. On review, the court found this to be error. It found that the ALJ need not secure a "medically equals" opinion by a program physician, that the ALJ must consider the opinion of a program physician regarding medical equivalence before finding that a claimant's impairment(s) medically equals a Listing, but that the ultimate responsibility for determining whether a claimant's impairment(s) medically equals a Listing remains that of the ALJ. Id., 2006 WL 4080050 at *6.

In Shook, the Commissioner objected to the Magistrate Judge's Report and Recommendation, but Judge Robinson overruled the objection and adopted the Report and Recommendation. Shook v. Barnhart, Civ. A. No. 5-4107-JAR, 2006 WL 2884083 (D. Kan.

Oct. 4, 2006). Judge Robinson reiterated that the error in the decision at issue in Shook was that the ALJ stated "medical equivalence must be proved by the medical opinion of a program physician." Id. 2006 WL 2884083 at *3. The opinion in Shook is consistent with the court's discussion of the law herein. The court in Shook did not address the issue presented here: whether another opinion from a program physician is necessary when additional evidence is considered which has not been previously considered by a program physician.

The court finds no error in the Commissioner's decision.

**IT IS THEREFORE RECOMMENDED** that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g), AFFIRMING the decision of the Commissioner.

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review. Morales-Fernandez v. INS, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 23rd day of February 2009, at Wichita, Kansas.

s/Donald W. Bostwick
**DONALD W. BOSTWICK**
**United States Magistrate Judge**